# In the United States Court of Federal Claims

No. 19-1640

(Filed: March 3, 2022)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RONALD J. DRISCOLL, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Motion to Dismiss; Justiciability; Motion for Judgment on the Administrative Record; Military Pay Act; Wrongful Discharge; Presumption of Regularity; Harmless Error.

*Carol Anne Thompson*, The Federal Practice Group, Washington, DC, counsel for Plaintiff.

*Stephanie Fleming*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## ORDER AND OPINION

**DIETZ, Judge.**

Plaintiff, Ronald J. Driscoll, brings this claim for wrongful discharge after he was separated from the United States Army under the Army's Qualitative Management Program. Driscoll challenges his separation as improper on several procedural grounds. Before the Court are the government's motion to dismiss for lack of justiciability and the parties' cross-motions for judgment on the administrative record.

Because Driscoll presents a mix of justiciable and nonjusticiable issues, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. However, the Court finds that the Army violated an important procedural protection to which Driscoll was entitled under the Army's regulations by erroneously rejecting documents submitted by Driscoll on his own behalf and failing to ensure that these documents were properly considered by the selection board. This error renders Driscoll's discharge void. Accordingly, Driscoll's motion for judgment on the administrative record is **GRANTED**. The government's cross-motion is **DENIED**.

## I.     FACTUAL BACKGROUND

Ronald J. Driscoll was involuntarily discharged from the United States Army on November 1, 2017, having completed approximately seventeen years and five months of active

duty service. AR 802-03.[1] At the time of discharge, Driscoll had reached the rank of Staff Sargent and was serving as a career recruiter. *Id.* The discharge stemmed from three adverse personnel actions taken against Driscoll after he was issued an Armed Forces Traffic Ticket for driving while intoxicated. AR 540; *see* AR 103-04, 258, 281-82. Pursuant to the Army's Qualitative Management Program ("QMP"), a selection board (the "QMP Board") "recommended [Driscoll] be denied continued active duty service" based upon these disciplinary events. AR 408.

### A.     The Underlying Incident and Adverse Administrative Actions

Driscoll received the traffic citation from Navy Police at the Naval Air Station in Kingsville, Texas, on April 19, 2015. AR 540. As Driscoll approached the main gate for an identification check, the checkpoint officer observed that Driscoll's hazard lights were activated and that there was an odor of alcohol. AR 11. Breathalyzer tests resulted in blood alcohol content readings above the legal limit. *Id.* Driscoll's on-base driving privileges were revoked for a year, *see* AR 140, but he did not face any civilian criminal charges. *See* AR 138.

This incident formed the basis for three adverse administrative actions taken against Driscoll by the Army: a General Officer Memorandum of Reprimand ("GOMOR"), AR 258; a nonjudicial punishment under Article 15 of the Uniform Code of Military Justice ("Article 15"), AR 103-04; and a Relief for Cause Non-Commissioned Officer Evaluation Report ("NCOER"), AR 281-82. Over Driscoll's unsuccessful challenges to these actions, a record of each was placed in his Army Military Human Resource Record ("AMHRR"). *See* AR 259-60, 422, 494. Though the substance of his challenges is not directly relevant to the case before this Court, Driscoll maintains that there were factual and procedural issues surrounding the underlying offense. *See* Pl.'s Mot. for J. on the Admin. R. at 2-3, ECF No. 22 [hereinafter Pl.'s MJAR].

### B.     Driscoll's Suspension and Reinstatement as Career Recruiter

On October 6, 2015, Driscoll received notification from Lieutenant General ("LTG") Mangum, the Deputy Commanding General of the Army's Training and Doctrine Command ("TRADOC"), that he was suspended from his position as a career recruiter pending a final decision on whether he would be permanently removed from the position. AR 234-35. The basis for the suspension was "credible evidence of alcohol abuse," a Type II offense under Army regulations. *Id.*; *see* Army Reg. 601-1 ¶¶ 2-6f, 5-7 (2016). LTG Mangum informed Driscoll that he would "render a final decision on [Driscoll's] removal from position of significant trust after reviewing and considering any statements or matters [Driscoll] may submit in response to this proposed action." AR 235.

In a memorandum issued on May 23, 2016, LTG Mangum "direct[ed] [Driscoll's] reinstatement as a recruiter." AR 236. After a review of the documentation that Driscoll

---

[1] The Court cites to the Administrative Record, filed by the government at ECF Nos. 17 and 33, as "AR ___."

provided, LTG Mangum determined that "the information in [Driscoll's] file does not call into question [his] character, conduct, or personal integrity, and [he is] still best suited to serve in a position of significant trust and authority." *Id.* Driscoll was reinstated to his position, effective as of the date of the memorandum. AR 827.

### C. The QMP Board's Separation Proceedings

On October 11, 2016, Driscoll was notified that he was being considered "for potential denial of continued active duty service under the Qualitative Management Program[.]" AR 143 (capitalization modified). Governed by Chapter 19 of the Army's administrative separation procedures, the QMP is designed to "deny continued service to [non-commissioned officers] whose performance, conduct, and/or potential to serve in positions of increasing responsibility do not meet Army standards." *Id.*; *see also* Army Reg. 635-200 ¶ 19-2a (2016). Each of the three unfavorable documents—the GOMOR, Article 15, and NCOER—in Driscoll's AMHRR was sufficient for him to be considered for denial of continued service under the QMP. *See* Military Personnel Message, 16-251, U.S. Army Human Res. Command, subject: Procedures for the Fiscal Year 2017 (FY17) Qualitative Management Program ¶¶ 2a(1)-(3) (QMP) (Sept. 7, 2016) [hereinafter MILPER Message 16-251].

To ensure that the QMP Board would review only complete and accurate information, Driscoll was entitled to petition the Department of the Army Suitability Evaluation Board ("DASEB") to remove unfavorable documents from his record. AR 144. Driscoll filed such petitions, requesting that the GOMOR and Article 15 be removed from his AMHRR or, alternatively, moved to the restricted fiche. AR 147, 270. The DASEB denied Driscoll's requests, finding that "[t]he evidence presented does not provide substantial evidence that the document in question has served its intended purpose or is untrue or unjust, and that its transfer or removal would be in the best interest of the Army." AR 414. Driscoll's petition to the Enlisted Special Review Board to remove the NCOER from his AMHRR was similarly denied. AR 424.

The QMP notice also informed Driscoll that he was permitted to "submit matters of mitigation or extenuation for consideration by the President of the [QMP] Board" no later than January 27, 2017. AR 143; *see also* MILPER Message 16-251 ¶ 6b. Through counsel, Driscoll submitted his matters of extenuation and mitigation, which were received by the QMP but "returned without action" on January 24, 2017. AR 393-95. The confusion stemmed from the fact that Driscoll included, as part of his submission, the aforementioned petitions to remove the GOMOR, Article 15, and NCOER from his AMHRR—petitions that the QMP does not adjudicate. *See id.* Driscoll separately submitted these petitions to the appropriate military boards but also included them in full in his submission to the QMP Board as mitigating evidence to demonstrate that the unfavorable documents that were to be considered by the QMP Board were "erroneous" and "highly unjust." AR 394; *see also* AR 406. Thus, though the cover letter labelled the documents as "[m]atters in extenuation and mitigation in re SSG Ronald J. Driscoll," they were interpreted as original petitions to correct his record and returned to him. AR 393-94.

3

Driscoll received the returned submission on January 27, 2017—the deadline for submission of materials to the QMP Board. *See* AR 398-99. Recognizing the error, counsel for Driscoll sent the documents again via overnight mail, but they were not set to be delivered until January 30, 2017, causing concern that they would not be considered by the QMP Board due to their untimeliness. *See* AR 400-04.

On April 3, 2017, the QMP Board notified Driscoll that it "conducted a comprehensive review of [his] record for potential denial of continued service under the Qualitative Management Program and recommended [he] be denied continued active duty service." AR 408. As a result, Driscoll was involuntarily discharged on November 1, 2017. AR 802.

## II.     PROCEDURAL HISTORY

### A.     Complaint in the Court of Federal Claims

Driscoll filed his complaint in this Court on October 22, 2019, alleging wrongful discharge under the Military Pay Act, 37 U.S.C. § 204. Compl. ¶ 4, ECF No. 1. Driscoll argued that the QMP Board's decision to separate him was wrongful and counter to controlling regulations because it failed to account for LTG Mangum's decision to reinstate Driscoll. *Id.* ¶¶ 53-56. Further, he argued that the DASEB's decision not to move unfavorable documents to the restricted fiche of Driscoll's AMHRR was erroneous.[2] *Id.* ¶¶ 58-59.

The government filed an unopposed motion for voluntary remand to the Army Board for Correction of Military Records ("ABCMR"). Def.'s Mot. for Remand, ECF No. 5. The Court granted the motion and remanded the case with instructions for the ABCMR to consider Driscoll's claims, allow Driscoll to submit additional information and argument in support of his claims, and grant any appropriate relief. Remand Order at 2, ECF No. 6. Driscoll submitted a supplement to his complaint to the ABCMR with the argument that his matters of mitigation and extenuation may not have been received or considered by the QMP Board given the confusion surrounding their submission. AR 43-44.

### B.     Decision of the ABCMR on Remand

The ABCMR denied Driscoll's application for relief on remand, finding that "[t]he evidence presented does not demonstrate the existence of a probable error or injustice." AR 27. Regarding LTG Mangum's decision to reinstate Driscoll, the ABCMR found that the decision was "not binding on other Army decision makers" and "in no way undermines the QMP's decision" to deny Driscoll continued service. AR 24. The ABCMR reasoned that the decision to reinstate Driscoll as a career recruiter was distinct from the question of whether he was fit for continued military service, stating that non-commissioned officers "do not spend their entire careers as recruiters" but rather "are expected to lead larger and larger units of actual Soldiers." *Id.*

---

[2] Driscoll also made a constitutional due process argument, *see* Compl. ¶¶ 44-51, but has since withdrawn that claim. *See* Pl.'s MJAR at 12 n.5.

4

The ABCMR further ruled that Driscoll did not prove that the QMP Board failed to consider Driscoll's matters of mitigation and extenuation. AR 25. Citing the "presumption of administrative regularity," Army Reg. 15-185 ¶ 2-9 (2006), the ABCMR concluded that Driscoll's assertions were "merely speculative and do not undermine the propriety of the QMP Selection Board's proceedings." AR 25. Additionally, the ABCMR noted that it was "empowered to take corrective action" based upon all materials that Driscoll wished to submit but found that Driscoll "failed to demonstrate by a preponderance of evidence that an error or injustice occurred relative to the QMP's consideration of relevant matters in making its decision" to deny continued service. *Id.*

### C.     Amended Complaint and Dispositive Motions

Following remand, Driscoll amended his complaint to challenge the ABCMR's determinations. *See* Am. Compl., ECF No. 14. As stated in his amended complaint and expounded upon in his subsequent motion for judgment on the administrative record, Driscoll's challenges can be categorized into three groups: 1) whether the DASEB's decision not to move unfavorable documents into the restricted fiche of Driscoll's AMHRR was erroneous; 2) whether the QMP Board should have given greater weight to or been bound by LTG Mangum's decision to reinstate Driscoll; and 3) whether the QMP Board erred by failing to consider Driscoll's matters of mitigation and extenuation. *See generally id.*; Pl.'s MJAR at 22-29.

In response, the government filed a combined motion to dismiss and cross-motion for judgment on the administrative record. *See* Def.'s Mot. to Dismiss and Cross-Mot. for J. on the Admin. R., ECF No. 27 [hereinafter Def.'s MTD/MJAR]. It argues that Driscoll's claim presents a nonjusticiable challenge to the merits of the separation decision or, alternatively, that Driscoll has failed to show that the determinations made by the DASEB, QMP Board, and ABCMR were wrongful. *See id.* With respect to Driscoll's argument that the QMP Board may not have considered his matters of mitigation and extenuation, the government argues that any doubt should be resolved in favor of the government due to the presumption of regularity that attaches to administrative matters within the military. *Id.* at 21, 24. The Court held oral argument on the motions on November 16, 2021. *See* Order, ECF No. 32.

### D.     Defendant's Correction to the Administrative Record

Apparently in response to the Court's inquiries during oral argument pertaining to the documents considered by the QMP Board, the government filed a correction to the administrative record on December 3, 2021. *See* Def.'s Mot. for Leave to Correct the Admin. R. at 1, ECF No. 33 [hereinafter Def.'s Mot. to Correct]. According to the government, the corrected record "constitute[s] the entire electronic file of documents considered by the QMP in this matter[.]" *Id.* All the documents in the file were already part of the administrative record originally filed in the case, with the exception of six pages: a five-page table of contents of the QMP file and a single sheet of paper with the typed words, "Additional Items of Mitigation are on Board room desk." AR 1412-17; *see also* Def.'s Mot. to Correct at 2-3.

Thomas Punjack, a Human Resource Assistant in the Army's Human Resources Command, explained this document in an affidavit filed contemporaneously with the corrected record. *See* Punjack Aff., ECF No. 33-4. Punjack states that he received Driscoll's submission prior to the convening of the QMP Board but that due to the size of the submission, he was unable to load it into the electronic QMP file in its entirety. *Id.* Instead, Punjack "loaded the first 8 pages of the document . . . and then added an additional page which stated 'Additional Items of Mitigation are on the Board Room Desk' to alert the [QMP] Board members of the presence of the rest of the items of mitigation and extenuation." *Id.* Punjack states that hard copies of the file were then placed on the board room desk when the QMP Board convened. *Id.*

The Court ordered the parties to file supplemental briefs explaining "how the new documents affect the merits of [the] case." Order at 1, ECF No. 34. Given the pertinence of the new information to one of the key issues in dispute, the Court required the government to "include an explanation for how these documents were discovered and why they have been excluded from the administrative record until now[.]" *Id.* In response, the government explained that the documents were not included in the administrative record before this Court because they were not in the record considered on remand by the ABCMR. Def.'s Suppl. Br. at 1, ECF No. 37. However, "no one could explain [their] omission" from the record before the ABCMR, and they only surfaced after agency counsel sought them out following oral argument. *Id.* at 3. Still, the government "maintain[s] that the Army is owed the benefit of the doubt through the presumption of administrative regularity" regarding the "issue of whether the QMP board actually considered the materials in its files[.]" *Id.* at 3-4. In his supplemental brief, Driscoll "maintains that [it] is unclear whether the QMP Board reviewed the full set of documents[.]" Pl.'s Suppl. Br. at 1, ECF No. 35.

### III. LEGAL STANDARDS

#### A. Jurisdiction

The Tucker Act confers upon this Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "merely a jurisdictional statute and does not create a substantive cause of action." *Rick's Mushrooms Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Rather, to establish this Court's jurisdiction under the Tucker Act, a plaintiff must identify "a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).

Under the Military Pay Act, 37 U.S.C. § 204, a plaintiff who has been wrongfully discharged from the military "is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Accordingly, the Military Pay Act serves as a money-mandating statute that

"provides for suit in the Court of Federal Claims when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).

### B. Justiciability

Brought pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), a motion to dismiss a claim as nonjusticiable challenges a court's competency to decide a controversy. *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995). "A controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (quotations omitted). "Justiciability is a particularly apt inquiry when one seeks review of military activities." *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993). This is because "judges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953). The "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province[,] and . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (footnotes omitted).

However, "although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.3d at 1323 (emphasis in original). Even in areas wholly within its discretion, the military "is nevertheless bound to follow its own procedural regulations if it chooses to implement some." *Murphy*, 993 F.2d at 873. Thus, a challenge to a procedural matter is within a court's competence because "[t]he court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Id.*

### C. Standard of Review of Military Correction Board Decisions

This Court reviews decisions by military correction boards based upon the administrative record under standards governed by the Administrative Procedure Act. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Under such standards, a court must determine whether a board's decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quotations omitted). Further, a correction board's decision "may be reviewed for failure to correct plain legal error committed by the military," including "violation of statute, or regulation, or published mandatory procedure, or unauthorized act." *Dodson*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (quotations omitted).

### D.      Motion for Judgment on the Administrative Record

Parties may move for judgment on the administrative record pursuant to RCFC 52.1, under which a court "make[s] factual . . . findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The inquiry before the court is whether a decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014).

## IV.    DISCUSSION

Driscoll argues that the Army committed, and the ABMCR failed to correct, multiple regulatory violations in processing his separation. "[A]n administrative discharge . . . is void if it exceeds applicable statutory authority, or ignores pertinent procedural rights or regulations, or violates minimum concepts of basic fairness" *Waller v. United States*, 461 F.2d 1273, 1276 (Ct. Cl. 1972). However, "strict compliance with procedural requirements is not required where the error is deemed harmless." *Wagner v. United States*, 365 F.3d 1358, 1362 (Fed. Cir. 2004). While a court may evaluate the harmlessness of some procedural errors, others are not subject to harmless error review because "the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body." *Id.* at 1364.

As detailed below, though Driscoll couches each of his allegations as procedural errors, two of the issues—the DASEB's decision not to relocate unfavorable documents within his AMHRR and the weight of LTG Mangum's decision to reinstate Driscoll—present nonjusticiable challenges to matters wholly within the discretion of the Army and therefore must be dismissed pursuant to RCFC 12(b)(6). Further, the Court finds meritless Driscoll's arguments that the QMP Board should have been bound by LTG Mangum's decision and that the ABCMR relied upon an erroneous presumption of fact in finding to the contrary.

However, the Court finds that the Army's mishandling of Driscoll's matters of mitigation and extenuation violated Army regulations and deprived Driscoll of an important procedural protection to which he was entitled—the ability to present documents on his own behalf in order "to ensure due process" in his separation proceedings. *See* MILPER Message 16-251 ¶ 6b. This error renders Driscoll's discharge void and entitles him to relief under the Military Pay Act.

### A.      The DASEB Decision

Driscoll alleges that the DASEB "committed procedural error" by failing to transfer unfavorable documents to the restricted portion of his AMHRR. Pl.'s MJAR at 22. According to Driscoll, Army regulations provide that an Article 15 punishment and GOMOR may be moved to the restricted portion if "(1) the documents have fulfilled their intended purpose and (2) such a move is in the Army's best interests." *Id.* (citing Army Reg. 600-37 ¶ 7-2(d)(3)(c)). Driscoll argues that these conditions were met in his case. *See id.* However, upon consideration of

Driscoll's petition, the DASEB "determined that there is insufficient evidence to justify removal or transfer of the unfavorable information to the AMHRR restricted section." AR 412.

The Court can hardly conceive of a discretionary matter less appropriate for judicial review than determining what is "in the Army's best interests." Driscoll's references to the Army's various "standards and values" and interest in "retaining a qualified and effective soldier like Driscoll" provide no objective tests or standards that the Court can administer within its competence. Pl.'s MJAR at 22-24; *see Voge*, 844 F.2d at 780. Driscoll's attempt to frame this as a procedural error is unavailing. Accordingly, this aspect of Driscoll's claim must be dismissed as nonjusticiable.

> **B.**     **The Effect of LTG Mangum's Reinstatement Decision**

Driscoll presents multiple related arguments pertaining to LTG Mangum's decision to reinstate Driscoll to his position as a career recruiter and its proper effect on the QMP Board. Like the ABCMR, the Court finds that nothing in the Army's regulations makes LTG Mangum's determination binding on the QMP Board. In the absence of a binding regulation, Driscoll's argument that the QMP Board should have viewed as persuasive or deferred to the reinstatement decision is a nonjusticiable challenge to the QMP Board's discretion to weigh evidence in making its own decision.

Whether the QMP Board was *bound* by LTG Mangum's reinstatement decision presents a justiciable question. The existence of a regulation that binds the QMP Board would permit the Court to evaluate, objectively, whether the QMP Board violated the regulation by reaching a decision that conflicted with the reinstatement decision. *See Voge*, 844 F.2d at 780 ("A controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence."). Unfortunately for Driscoll, no such regulation exists.

Though not explicitly referenced in LTG Mangum's memorandum, Driscoll was likely reinstated pursuant to Army Regulation 601-1 ¶ 5-9c, which states:

> Soldiers who are subject to removal from recruiting duty for a Type II offense . . . are eligible to request a waiver from the [Commanding General], TRADOC to be reinstated to recruiting duty. If the waiver is not granted, then the Soldier must be removed from serving as a recruiter or in any other [position of significant trust and authority].

Driscoll believes that the QMP Board violated two regulations that bound it to act in accordance with Driscoll's reinstatement under this provision.

The first regulation alleged to have been violated provides that "[o]nce a particular incident of Type II conduct has been waived, it remains waived so long as the Soldier is a

recruiter." Army Reg. 601-1 ¶ 5-9c(1). Driscoll interprets this to mean that "once the waiver has been issued, the incident is considered resolved and immaterial to future consideration in removal purposes, provided that the soldier remains a recruiter." Pl.'s Reply at 8, ECF No. 30. Such an interpretation unduly expands the scope of the regulation and the effect of a waiver. The regulation permits a waiver for the limited purpose of allowing a suspended recruiter "to be reinstated to recruiting duty," Army Reg. 601-1 ¶ 5-9c, not to be shielded from all other consequences of the underlying conduct. Further, the waiver allows for reinstatement "*despite* the conduct under review," Army Reg. 601-1 ¶ 5-9c(2) (emphasis added); it does not render the conduct "resolved" or "immaterial." Put simply, the waiver meant that Driscoll would no longer be "subject to removal *from recruiting duty*" for the underlying conduct at issue. *See* Army Reg. 601-1 ¶ 5-9c (emphasis added). That Driscoll's conduct remained waived for this limited purpose did not preclude other Army decision makers, including the QMP Board, from considering it for their own purposes. *See Martinez v. United States*, 77 Fed. Cl. 318, 328 (2007) (holding that "the apparent inconsistency between the plaintiff's [Army Good Conduct Medal] award and subsequent discharge may be explained by the difference between the purposes and standards of evaluation associated with the award and the QMP program").

Relatedly, Driscoll argues that the ABCMR relied on a factual error in ruling that the QMP Board was not bound by this provision. *See* Pl.'s MJAR at 24-27; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (an agency's decision may be arbitrary or capricious if it "offered an explanation for its decision that runs counter to the evidence before the agency."). Driscoll argues that the ABCMR's statement that non-commissioned officers "do not spend their entire careers as recruiters," AR 24, runs counter to the fact that Driscoll was classified as a career recruiter. Pl.'s MJAR at 25. However, the ABCMR did, in fact, acknowledge that Driscoll's reinstatement would allow him "to finish his tour of duty as a recruiter." AR 24. Thus, the ABCMR did not err in this fact but rather used it to highlight the difference in purpose between the reinstatement determination and the QMP, which permits the QMP Board to consider a soldier's "potential for advancement." Army Reg. 635-200 ¶ 19-2a. Accordingly, the ABCMR rationally concluded that LTG Mangum's "determination that [Driscoll] had sufficient characteristics to remain *as a recruiter* is not binding on other Army decision makers (such as the QMP Selection Board) as to whether the applicant should, or should not, be retained *for additional Army service*."[3] AR 24 (emphasis added).

The second regulation allegedly violated by the QMP Board, Army Regulation 635-200 ¶ 1-17b, states that administrative separations "normally should not be based on conduct that has already been considered at an administrative or judicial proceeding and disposed of in a manner indicating that separation was not warranted." Army Reg. 635-200 ¶ 1-17b. Because Driscoll's waiver request was reviewed and granted by LTG Mangum, Driscoll argues the decision "should

---

[3] Further, Driscoll's argument on this point is necessarily predicated upon a finding that had the ABCMR treated Driscoll as a career recruiter, the QMP Board would have been bound by the reinstatement decision. As discussed, however, the fact that Driscoll's conduct "remain[ed] waived so long as [he was] a recruiter," Army Reg. 601-1 ¶ 5-9c(1), did not bind the QMP Board regardless of whether Driscoll was classified as a career recruiter.

have been deferred to" in the subsequent separation proceeding. Pl.'s Reply at 11. But Army Regulation 635-200 ¶ 1-17b contains the important qualifier that separations "normally should not" be based on previously addressed conduct. This nonmandatory language leaves discretion with the separation authority. Outside of several "restrictions" that are not applicable to separations through the QMP, the regulation provides no guidance on when it is appropriate for a separation authority to depart from this broad instruction. *See* Army Reg. 635-200 ¶ 1-17b(1)-(4). Accordingly, though the provision may appear favorable to Driscoll,[4] the QMP Board's possible departure from the nonmandatory instruction cannot be said to be a violation of the regulation.

Without a regulation that binds the QMP Board to LTG Mangum's reinstatement decision, Driscoll's arguments on this front amount to nonjusticiable controversies over the weight assigned to the evidence by the QMP Board. Driscoll highlights the "overlap" in standards governing reinstatement to recruiting duty and separation through the QMP to argue that his reinstatement should have been "persuasive on the QMP." Pl.'s Reply at 6. As stated, however, the difference in purpose between reinstatement to recruiting duty and the QMP allows for different conclusions under the standards governing each. Further, the QMP regulations state that a soldier's ability to meet Army standards are to be "determined by the approved recommendations of . . . centralized selection boards responsible for QMP screening," not any other Army authority. *See* Army Reg. 635-200 ¶ 19-2a. Thus, though LTG Mangum's determination may have been "persuasive," the Court cannot review the QMP Board's discretion to assign relative weight to the evidence before it in order to make its own determination on Driscoll's fitness for continued service in the Army.

### C. Driscoll's Matters of Mitigation and Extenuation

The Court finds that the Army committed procedural error by erroneously rejecting Driscoll's documents submitted as matters of mitigation and extenuation, causing them to be submitted after the deadline and thus putting them at risk of not being considered by the QMP Board. Such an error may be deemed harmless in one of two ways: if the QMP Board actually considered Driscoll's submission despite its untimeliness, or if the QMP Board would have reached the same decision regardless of whether it considered Driscoll's submission. In the absence of the presumption of regularity, which the ABCMR improperly applied, the record does not reflect that the QMP Board actually considered the documents that Driscoll was entitled to present in support of his continued service. Further, because the QMP Board possessed broad discretion in its separation decision, substantively unreviewable under any tangible standards, a reviewing body cannot speculate as to what the QMP Board might have decided if not for the error in order to apply the harmless error rule. Accordingly, the Court concludes that the procedural error was not harmless, and Driscoll is entitled to relief for his unlawful separation.

---

[4] The Court notes that even if the regulation were mandatory, there may be a dispute over whether LTG Mangum's decision constituted an "administrative . . . proceeding" that "disposed of" the underlying conduct, as contemplated by the regulation. *See* Army Reg. 635-200 ¶ 1-17b.

11

1. <u>The Army Committed Procedural Error</u>

QMP procedures establish a soldier's right "[t]o ensure due process" by allowing the soldier "to submit matters of mitigation or extenuation to the president of the board" prior to consideration for denial of continued service. MILPER Message 16-251 ¶ 6b. Submissions are required to be "submitted as one document (to include enclosures) and organized in the manner to be presented to the board." *Id.* The QMP memorandum notifying a soldier of potential denial of continued service "will identify a suspense date . . . for submission of matters to the board president." *Id.* Driscoll's notification memorandum informed him of his right to submit matters of mitigation and extenuation and required that he submit them no later than January 27, 2017. AR 143.

In compliance with this procedure, Driscoll submitted his matters of mitigation and extenuation, which were received by the Army by January 24, 2017, at the latest. *See* AR 393-95. The submission contained a cover letter and three enclosures, which comprised three previously filed petitions to remove unfavorable documents from Driscoll's AMHRR. AR 394; *see* AR 147, 270, 424. Though the QMP Board does not adjudicate such petitions, Driscoll's cover letter explained that he was submitting "enclosures (1) – (3) as documentation in mitigation and extenuation for consideration by the President of the Board." AR 394. In other words, Driscoll repurposed these petitions not to request that the QMP Board remove the unfavorable documents from his AMHRR but rather to help demonstrate that Driscoll was "a quality Soldier who still has years of service to provide the Army." AR 395. Driscoll's submission was timely and compliant with the submission instructions, and his short cover letter made clear that its purpose was within the scope of the QMP Board's review.[5] *See* AR 394-95.

As such, the Army acted erroneously and contrary to its procedures when it returned Driscoll's submission "without action." *See* AR 393. The Army's error forced Driscoll to resubmit his documents on January 30, 2017, beyond the established suspension date for submissions, and thus, put these documents at risk of not being considered by the QMP Board. *See* AR 404. The record contains no acknowledgement of the Army's error or indication of how Driscoll's faultlessly untimely submission would be treated. Through its own error, the Army compromised the important procedural protection afforded Driscoll to submit favorable documents on his behalf "to ensure due process" during the QMP separation proceedings. *See* MILPER Message 16-251 ¶ 6b.

2. <u>The Government Has Not Demonstrated that the QMP Board Actually Considered Driscoll's Submission</u>

The Army's mishandling of Driscoll's matters of extenuation and mitigation constitutes a procedural error in Driscoll's separation, but such an error is not necessarily sufficient to void the discharge if the error is deemed to be harmless. Whether the QMP Board ultimately considered

---

[5] Neither the ABCMR nor the government posits that Driscoll's submission was noncompliant or that its return to him was appropriate.

Driscoll's submission, despite its untimeliness, is an inquiry into the harmlessness of the Army's error. For the reasons set forth below, the Court finds that the government has not demonstrated that the QMP Board actually considered Driscoll's submission.

"[S]trict compliance with procedural requirements is not required where the error is deemed harmless." *Wagner*, 365 F.3d at 1362. As such, a plaintiff must show the existence of an administrative error and, further, must "at least . . . set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003) (quoting *Hary v. United States*, 223 F.2d 704, 707 (Ct. Cl. 1980)). If the plaintiff makes such a showing, the "end-burden of persuasion falls to the Government to show harmlessness—that, despite the plaintiff's prima facie case, there was no substantial nexus or connection." *Christian*, 337 F.3d at 1343 (quoting *Engels v. United States*, 678 F.2d 173, 175 (Ct. Cl. 1982)).

In this instance, the Court believes that Driscoll has set forth enough material to place the burden on the government to show that the Army's error was harmless. Notably, Driscoll has set forth everything within his control to show that the QMP Board may not have considered his materials. Driscoll has demonstrated that he submitted his materials on time, that they were erroneously returned to him on the deadline for submission, that he was forced to resubmit them beyond the deadline, and that there were no assurances that they would be considered. Further, QMP guidelines identify the possibility of material error due to "the absence of a document" that "should have been in the board file" but was "missing because of an administrative error or omission for which the Soldier concerned is not responsible." Army Reg. 600-8-19 ¶ 6-12d(2)(c) (2016); *see* MILPER Message 16-251 ¶ 8b(1) (citing Army Reg. 600-8-19 as establishing the rules for material error). Thus, Driscoll has demonstrated that there was a credible risk that his submission was not considered and that such an error would be prejudicial. Because the remainder of the ability to prove, factually, that the QMP Board actually considered Driscoll's submission resides entirely with the Army, the Court finds it appropriate to shift the burden to the government to demonstrate harmlessness here.

The government argues that the Court should apply the presumption of regularity, as the ABCMR did, to presume the fact the QMP Board properly considered Driscoll's materials. *See* Def.'s MTD/MJAR at 25; AR 25. The ABCMR "begin[s] its consideration of each case with the presumption of administrative regularity." Army Reg. 15-185 ¶ 2-9. The presumption of regularity "supports official acts of public officers" and "allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). However, the presumption "does not help to sustain an action that on its face appears irregular[.]" *United States v. Roses Inc.*, 706 F.2d 1563, 1567 (Fed. Cir. 1983). When a presumption is overcome, it disappears and "[t]he party originally favored by the presumption is now put to [its] factually-supported proof." *Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998).

The ABCMR erred in applying the presumption of regularity. Driscoll has overcome the presumption of regularity in this case by demonstrating that the Army plainly did not follow its

13

regular procedures. Alternatively, the presumption never should have applied in the first place because the Army's actions, on their face, appeared irregular. In a regular procedure, Driscoll would have submitted his matters of mitigation and extenuation before the deadline, the Army's Human Resource Command would have accepted the submission as properly submitted for consideration, and the QMP Board would have considered the submission. Under such circumstances, though the record might not contain any evidence that the QMP Board actually considered Driscoll's submission, the presumption of regularity would function to allow a Court to presume that fact. These ordinary circumstances are not present here. The Army's mishandling of Driscoll's submission created an irregular procedure in which Driscoll's materials were received after the submission deadline, naturally causing concern that they would be disregarded as untimely. With no indication of how such materials would be treated, such concern is warranted.

In fact, the government even argues that the presumption of regularity could apply in conflicting ways to conclude that the QMP Board acted properly—either by "*not reviewing the matters because they were untimely* or in reviewing the matters because they arrived before the QMP Selection Board convened." Def.'s MTD/MJAR at 25 (emphasis added). Using the government's proposed application of the presumption of regularity, the Court could find that the documents were not considered because they were untimely, and that, therefore, the error was not harmless. Such conflicting applications of the presumption of regularity and their results illustrate the impropriety of its use here. The Court will not presume regularity in the face of irregularity and will not allow the government to exploit the presumption to shield itself from its own errors.

In the absence of the presumption of regularity, the Court finds that the government has not met its burden to show that the QMP Board properly considered Driscoll's submission. The QMP Board's separation decision provides no insight into its reasoning that would allow the Court to determine whether Driscoll's submission was considered. The substantive portion of the decision reads, in its entirety: "The Qualitative Management Program Selection Board conducted a comprehensive review of your record for potential denial of continued service under the Qualitative Management Program and recommended you be denied continued active duty." AR 408. In light of the legitimate concerns over the contents of Driscoll's record, the QMP Board's generic statement that it "conducted a comprehensive review" provides no reassurance that Driscoll's submission was considered. While the government may be correct that the regulations do not "require that the QMP Selection Board memorialize and reveal . . . what it considered," *see* Def.'s MTD/MJAR at 25, the absence of such information precludes a conclusive finding that Driscoll's submission was part of the comprehensive review.

The Court is unconvinced that the government's correction to the administrative record, filed in support of its contention that Driscoll's submission was considered, resolves the issue in the government's favor. The corrected record, which "constitute[s] the entire electronic file of documents considered by the QMP in this matter," does little but confirm that Driscoll's separation procedure continued to be irregular. Of Driscoll's submission of matters of mitigation and extenuation, the electronic file contains only the cover letter and two pages of his enclosures.

14

*See* AR 1406-09. The recently unearthed placeholder document stating that there were "additional items of mitigation . . . on [the] board room desk," AR 1412 (capitalization modified), suffers from the same unresolved questions about the content of those files and their consideration by the QMP Board. Further, preceding the limited fraction of Driscoll's submission contained in the electronic file is the memorandum erroneously returning Driscoll's submission and informing him that they should not have been submitted to the QMP Board. *See* AR 1404-05. Thus, before reaching Driscoll's submission, a reviewer would read a document stating that the submission is not properly within the realm of consideration of the QMP Board, causing obvious concern about whether the submission was considered.

In sum, given the irregularity surrounding the Army's handling of Driscoll's submission of matters of extenuation and mitigation, the Court is unwilling to give the government "the benefit of the doubt through the presumption of administrative regularity." *See* Def.'s Suppl. Br. at 3. Without the presumption, the government has not shown that Driscoll's submission was actually considered by the QMP Board, and, therefore, the Court finds that the error was not harmless.

       3.      <u>Whether the QMP Board Would Have Made the Same Decision Regardless of the Error Is Not Subject to Harmless Error Review</u>

Finally, the government argues that "even if Mr. Driscoll could prove that the QMP did not consider his submission," the ABCMR reviewed Driscoll's submission and concluded that his discharge was warranted. Def.'s MTD/MJAR at 25; *see also* AR 25 (noting that the ABCMR "is empowered to take corrective action and has available to it any matters the applicant and his counsel wished to submit"). This amounts to an argument that the Army's error was harmless because Driscoll would have been separated, regardless of whether the QMP Board properly reviewed his submission or not.

Such a question is not amenable to harmless error review. Some procedural errors are not subject to harmless error review because "the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body." *Wagner*, 365 F.3d at 1364. Harmless error review requires "reviewable standards or factors [that] constrain the exercise of discretion" so that a court may assess the effect of an error on the outcome. *Id.* at 1365. However, "where a finding of harmlessness would require us to approximate the absolute discretion" of the military, a reviewing body "will not speculate as to what the outcome might have been had the error not occurred." *Id.*

Here, the QMP Board enjoyed virtually unbridled discretion in deciding whether to recommend Driscoll for denial of continued service. There are no objective standards that govern a separation decision under the Army's QMP. *See* Army Reg. 635-200 ¶ 19-7 (listing discretionary selection criteria). Further, as mentioned, the QMP Board's decision contains no explanation that would allow the Court to understand its reasoning to determine if some aspect of Driscoll's file demanded separation regardless of any mitigating evidence. *See* AR 408. In such an instance, it is inappropriate for the Court to apply harmless error by speculating what the

15

QMP Board might have done had it properly considered Driscoll's submission of matters of mitigation and extenuation. Accordingly, the ABCMR's conclusion that Driscoll's separation was warranted, based upon a review of all of the documents that should have been before the QMP Board if not for the error, does not cure the defective procedure. *See Dodson*, 988 F.2d at 1206 ("The ABCMR reviews selection decision for error; it does not . . . make selection decisions on a *de novo* basis. Therefore, the ABCMR's mere consideration of a defective personnel decision does not cure the defect.").

### D.   Remedy

As mentioned, under the Military Pay Act, 37 U.S.C. § 204, a plaintiff who has been wrongfully discharged from the military "is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez*, 333 F.3d at 1303. Further, the Tucker Act grants this Court authority to provide equitable relief "incident of and collateral to" any monetary judgment, including "directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records[.]" 28 U.S.C. § 1491(a)(2).

For the reasons set forth above, Driscoll's separation from the Army was unlawful due to the Army's procedural error, and the ABCMR failed to correct this error. Accordingly, Driscoll is entitled to back pay and allowances back to November 1, 2017, the date of his wrongful discharge. Further, he is entitled to correction of his records and reinstatement as an incident to the award of monetary relief.

### V.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's motion for judgment on the administrative record is **GRANTED**. Defendant's cross-motion for judgment on the administrative record is **DENIED**.

The matter is **REMANDED** to the ABCMR for the correction of Driscoll's military record to reflect his retroactive reinstatement to active duty in the United States Army effective November 1, 2017. The ABCMR shall determine the amount of back pay and other benefits or allowances that Driscoll would have received but for his wrongful discharge. Finally, the ABCMR shall make any other corrections and take any other actions that are appropriate in light of the Court's decision that Driscoll's discharge was wrongful.

The Clerk is directed to serve a certified copy of this Order and Opinion on the Army Board for Correction of Military Records at the following address:

Department of the Army
Army Review Boards Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

Remand proceedings shall be completed within 120 days of this decision. The parties **SHALL FILE** a joint status report every sixty days advising the Court of the status of the proceedings on remand. The Court will retain jurisdiction over the case during the remand period and **STAYS** the case during such time.

Pursuant to RCFC 52.2(e), the parties **SHALL FILE** notice with the Court within thirty days of the ABCMR's completion of its actions on remand stating whether such actions afford a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz  
THOMPSON M. DIETZ, Judge